UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

JET CAPITAL MASTER FUND, L.P., J.  :
GOLDMAN MASTER FUND, L.P., LUMX JET  :
FUND LIMITED, and WALLEYE TRADING,  :
LLC,  :
:
Plaintiffs,  :
:
v.  :
:
AMERICAN REALTY CAPITAL PROPERTIES,  :
INC., NICHOLAS S. SCHORSCH, DAVID S.  :
KAY, BRIAN S. BLOCK, and LISA P.  :
MCALISTER,  :
:
Defendants.  :

------------------------------------------------------------x

## COMPLAINT AND JURY DEMAND

Plaintiffs Jet Capital Master Fund, L.P., J. Goldman Master Fund, L.P., LumX Jet Fund

Limited, and Walleye Trading, LLC (collectively, "Plaintiffs") are purchasers of common stock

issued by American Realty Capital Properties, Inc. ("ARCP," or the "Company"). Plaintiffs,

through their undersigned attorneys, by way of this Complaint and Jury Demand, for their federal

securities and common law claims against ARCP and its former officers Nicholas S. Schorsch,

David S. Kay, Brian S. Block and Lisa P. McAlister (the "Individual Defendants," and,

collectively with ARCP, "Defendants"), allege the following upon personal knowledge as to

themselves and their own acts, and upon information and belief as to all other matters.

Plaintiffs' information and belief is based on, *inter alia*, an investigation by their

attorneys, which investigation includes, among other things, a review and analysis of: ARCP's

filings with the U.S. Securities and Exchange Commission ("SEC"); public documents and

media reports concerning ARCP; and a verified complaint filed by Defendant McAlister in the

Supreme Court of the State of New York on or about December 18, 2014. Many of the facts supporting the allegations contained herein are known only to Defendants or are exclusively within their custody and/or control. Plaintiffs believe that further substantial evidentiary support will exist for the allegations in this Complaint after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      Plaintiffs are investment funds who purchased ARCP common stock prior to October 29, 2014. They bring this action under the federal securities laws and under the common law to recover for the investment losses they suffered as a result of numerous false and misleading statements in ARCP's public filings with the SEC (including its annual report for the year ending December 31, 2013, and its quarterly reports for the first two quarters of 2014), as well as due to other misrepresentations that ARCP and its senior executives made to Plaintiffs to induce them to purchase ARCP stock.

2.      ARCP is a publicly traded real estate investment trust ("REIT") that purchases and owns commercial properties. It generates income from the rent that it receives from the commercial tenants who lease ARCP's properties. ARCP leases its properties to large, well-established companies, such as Red Lobster, Walgreens, CVS, and FedEx.

3.      One of the most important metrics that investors use when valuing ARCP's stock is "adjusted funds from operations," or "AFFO." Generally speaking, AFFO quantifies the cash flows that ARCP receives from the leasing of its properties to commercial tenants by removing from ARCP's net income or loss any gains incurred and losses suffered by ARCP that are not related to the actual leasing of the properties, such as ARCP's acquisition expenses. In its public statements to investors, ARCP repeatedly touted AFFO as a material metric that investors should use in determining the sustainability of ARCP's long-term operating performance and for comparing ARCP's operating performance to other companies.

4.     Unbeknownst to the public, in its annual report for the year 2013 ARCP materially overstated its AFFO due to its conflation of different accounting methods for computing AFFO.  Thus, ARCP gave the market false information about the sustainability of its long-term operating performance and its operating performance in comparison to other companies, and misrepresented that its condition and performance were materially better than they actually were as of December 31, 2013.

5.     Defendant McAlister (who was at that time ARCP's Chief Accounting Officer), Defendant Block (who was at that time ARCP's Chief Financial Officer), and Defendant Kay (who was at that time ARCP's President) knew about the improper accounting with respect to AFFO in ARCP's annual report.  However, none of those individuals corrected the false financial information.  To the contrary, Kay expressly instructed Block and McAlister not to disclose the improper accounting to others.

6.     The following quarter ARCP elected to compound, rather than remedy, this improper accounting.  ARCP repeated the improper accounting with respect to AFFO in its first quarterly report of 2014, this time at the direction of Kay and Defendant Schorsch (who was at that time ARCP's Chairman and CEO).

7.     On or about July 28, 2014, Schorsch instructed Block to change to a proper accounting method for calculating AFFO, but to conceal from investors the improper accounting of AFFO in the previously filed Form 10-K and Form 10-Q when filing the Form 10-Q for the second quarter of 2014.  To accomplish this fraudulent concealment, Schorsch told Block to improperly defer certain expenses that accrued during the second quarter of 2014 to the third quarter of 2014.  This had the effect of overstating ARCP's AFFO and understating ARCP's net loss for the three and six months ending June 30, 2014 that were reported in the Form 10-Q for

the second quarter.  Despite this accounting fraud, Schorsch, Block and McAlister all signed the Form 10-Q for the second quarter, and Schorsch and Block both signed false certifications as to the accuracy of the financial information contained in the Form 10-Q and the adequacy of ARCP's internal accounting controls.

8.     On or about September 7, 2014, the improper AFFO accounting in the 2013 annual report and the 2014 first quarter report, as well as the fraudulent concealment of that improper accounting in the 2014 second quarter report, were brought to the attention of ARCP's audit committee by a corporate whistleblower.  The audit committee hired counsel and a forensic accounting team to assist it in conducting an investigation.

9.     On or about October 29, 2014, ARCP publicly disclosed the results of the audit committee's preliminary investigation.  In a Form 8-K filed with the SEC, ARCP disclosed the improper and fraudulent accounting in the first and second quarterly reports for 2014, and stated that those reports, along with its annual report for the year ending December 31, 2013, could no longer be relied upon by the investing public.  ARCP also disclosed that the audit committee had requested that Block and McAlister resign from their positions at ARCP because those individuals were responsible for the improper accounting.

10.     As a result of this disclosure, ARCP's stock price began to plummet.  On October 28, 2014, prior to the public disclosure, ARCP's common stock closed at a price of $12.38 per share.  By November 3, 2014, it had dropped to $7.85 per share.

11.     The October 29 disclosure did not reveal the full extent of ARCP's conduct because it failed to disclose Kay's and Schorsch's participation, and it created the impression that the improper accounting was limited to the 2014 quarterly reports.  A few weeks later, however, on or about December 15, 2014, ARCP issued press releases announcing that Schorsch

had "stepped down" from his position with the Company and that ARCP was "unwinding all of its relationships with entities in which Mr. Schorsch maintains an executive or director-level role or is a significant stockholder." Furthermore, ARCP announced that Kay and Lisa Beeson (at that time, ARCP's President and Chief Operating Officer) were also "stepping down." Upon the release of this news, ARCP's stock price again tumbled.

12.    Three days later, McAlister filed a lawsuit against ARCP, Schorsch and Kay, alleging defamation in connection with the termination of her employment.   McAlister filed a sworn pleading detailing the involvement of Schorsch, Kay and Block, as well as her own involvement, in the improper and fraudulent accounting at ARCP with respect to the 2014 quarterly reports.   She also disclosed that Kay, Block and she had been aware of the misrepresentations in ARCP's 2013 annual report. This disclosure caused a further decline in ARCP's stock price.

13.    The improper and fraudulent accounting and the complete lack of adequate internal controls at ARCP were in stark contrast to the representations that ARCP was contemporaneously conveying to the market.   In response to certain criticisms from investors, ARCP made several announcements to reassure investors that it was an independently managed company of the highest integrity with superior corporate governance and strong internal controls.

14.    ARCP also held a series of individual and group investor meetings in which its senior executives repeatedly touted the purported strength of ARCP's new management team, increased investor transparency, and ARCP's improved corporate governance and internal controls.  In one such meeting with Plaintiffs in September 2014, Kay expressed his confidence in the "integrity" of ARCP's numbers.  A few days later, Block made a similar representation

about the purported accuracy of ARCP's financial results to a group of investors, including Plaintiffs.

15.     As it turns out, these statements were false.  In September 2014, Schorsch, Kay, Block and McAlister all knew that ARCP's published financial results dating back to its 2013 annual report were materially misleading, and that ARCP lacked adequate internal controls to protect the investing public from the fraud that they had perpetrated.

16.     In making their decisions to invest in ARCP's common stock between July 30 and October 27, 2014, Plaintiffs read, reviewed, listened to and relied on Defendants' materially misleading statements.  The effect of Defendants' material misstatements and omissions was to give Plaintiffs a materially false account of the Company's financial health and its internal controls.  Had it not been for these material misrepresentations, Plaintiffs either would not have purchased their ARCP shares or would not have paid the prices they paid.

17.     As a result of the disclosure of the improper accounting and the subsequent fraudulent concealment, Plaintiffs have suffered tens of millions of dollars of losses.

## JURISDICTION AND VENUE

18.     The claims asserted herein arise under and pursuant to Sections 10(b), 18 and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78r and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and under state common law.

19.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331, and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

20.     Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391.  Many of the acts giving rise to the violations complained of herein, including the

dissemination of false and misleading information, occurred and had their primary effects in this District.

21.     In connection with the acts, transactions and conduct alleged herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of a national securities exchange and market.

**PARTIES**

A.     **Plaintiffs**

22.     Plaintiff Jet Capital Master Fund, L.P. purchased ARCP common stock between July 30, 2014 and October 27, 2014. A list of the dates on which it purchased ARCP common stock during the relevant period is attached hereto as Exhibit A.

23.     Plaintiff J. Goldman Master Fund, L.P. purchased ARCP common stock between July 30, 2014 and October 27, 2014. A list of the dates on which it purchased ARCP common stock during the relevant period is attached hereto as Exhibit A.

24.     Plaintiff LumX Jet Fund Limited purchased ARCP common stock between July 30, 2014 and October 27, 2014. A list of the dates on which it purchased ARCP common stock during the relevant period is attached hereto as Exhibit A.

25. Plaintiff Walleye Trading, LLC purchased ARCP common stock between July 30, 2014 and October 27, 2014. A list of the dates on which it purchased ARCP common stock during the relevant period is attached hereto as Exhibit A.

26.     Each of Plaintiffs' purchases of ARCP common stock was made through Jet Capital Investors, L.P. ("Jet Capital"). Jet Capital serves as investment advisor to each of the Plaintiffs.

### B.   Defendants

27.     Defendant ARCP is a Maryland corporation that classifies itself as a REIT for federal tax purposes.  Its offices are located at 405 Park Avenue, New York, NY 10022.  ARCP closed its initial public offering on September 7, 2011, and since that time its common stock has traded on the NASDAQ Stock Market under the symbol "ARCP."

28.     Defendant Nicholas S. Schorsch founded ARCP in 2010.  He served as its Chief Executive Officer ("CEO") until on or about September 30, 2014.  Schorsch served as the Chairman of ARCP's Board of Directors from the Company's inception until on or about December 15, 2014.  As Chairman and CEO of ARCP, Schorsch signed:  (a) ARCP's false and misleading annual report on Form 10-K for the year ending December 31, 2013 (the "2013 Annual Report"), as well as a certification for that report pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"); (b) ARCP's false and misleading quarterly report filed on Form 10-Q for the quarter ending March 31, 2014 (the "2014 First Quarter Report"), as well as a certification for that report pursuant to SOX; and (c) ARCP's false and misleading quarterly report filed on Form 10-Q for the quarter ending June 30, 2014 (the "2014 Second Quarter Report"), as well as a certification for that report pursuant to SOX.

29.     Defendant David S. Kay joined ARCP as President on or around December 16, 2013.  He was later appointed as CEO on or around October 1, 2014, but stepped down soon thereafter, on or about December 15, 2014.  As President of ARCP, Kay signed the false and misleading 2013 Annual Report.

30.     Defendant Brian S. Block acted as Chief Financial Officer ("CFO") of ARCP since its inception.  His employment with ARCP was terminated on or about October 28, 2014, just prior to the Company's disclosure of the improper accounting and subsequent fraudulent concealment.  As CFO of ARCP, Block signed:  (a) the false and misleading 2013 Annual

Report, as well as a certification for that report pursuant to SOX; (b) the false and misleading 2014 First Quarter Report, as well as a certification for that report pursuant to SOX; and (c) the false and misleading 2014 Second Quarter Report, as well as a certification for that report pursuant to SOX.

31.     Defendant Lisa A. McAlister joined ARCP on or about November 4, 2013, as Senior Vice President and Chief Accounting Officer ("CAO").   In or around July 2014, McAlister was made Principal Accounting Officer of ARCP.   Her employment with ARCP was terminated on or about October 28, 2014, just prior to the Company's disclosure of the improper accounting and subsequent fraudulent concealment.   As Senior Vice President and CAO of ARCP, McAlister signed:  (a) the 2013 Annual Report; and (b) the 2014 Second Quarter Report.

## FACTUAL ALLEGATIONS

### A.     Schorsch's REIT Empire and ARCP

32. According to the *Wall Street Journal*, Nicholas Schorsch is one of the country's top "real-estate power brokers."  Schorsch entered the commercial real estate market in 1998 when he purchased 105 First Union Bank branch locations set to be closed down due to First Union's acquisition of CoreStates Financial.  Schorsch acquired these branch locations for $22.3 million, and then generated income from them by leasing the properties to other banks.  In 2002, Schorsch rolled his bank properties into a REIT named American Financial Realty Trust, which went public in 2003.  In 2006, Schorsch left American Financial Realty Trust and moved into the nontraded commercial REIT and advisory market.  Schorsch founded the triple net lease REIT American Realty Capital Trust (ARCT) in 2007, publicly listed the company in 2012, and sold the company in 2013 to Realty Income – the industry leader in public triple net lease REITs – for $1.9 billion in stock.  According to *Forbes*, by 2014 Schorsch was Chairman and/or CEO of over

a dozen real-estate and alternative-investing companies, and had an estimated net worth of $1.5 billion.

33.     One of the companies of which Schorsch became the Chairman and CEO was ARCP. Schorsch founded ARCP in 2010 and took it public in 2011. ARCP is a real estate company that purchases, owns and operates commercial properties. The properties that ARCP acquires are single-tenant, free-standing and primarily subject to net leases. Generally speaking, net leases are leases where the tenant pays the expenses that are traditionally borne by the landlord, such as building maintenance expenses, property taxes, and insurance. This allows ARCP to distribute the rent it receives from its properties, less certain fees, to its shareholders in the form of dividends.

34.     As of September 2014, ARCP's top ten tenants were Red Lobster, Walgreens, CVS, Dollar General, FedEx, Family Dollar, GSA, Albertson's, Citizens Bank, and AT&T.

35.     Substantially all of ARCP's business is conducted through its operating partnership, ARC Properties Operating Partnership, L.P. (the "Operating Partnership"). As of December 31, 2013, ARCP held approximately 95.8% of the equity interests of the Operating Partnership.

**B.     The Importance of AFFO as a Measure of ARCP's Operating Performance**

36.     As a public company, ARCP is required to report its financial results in accordance with United States Generally Accepted Accounting Principles ("U.S. GAAP"). U.S. GAAP requires a business to report, among other things, its net income or loss in its financial statements.

37.     In addition to results from operations, net income or loss under U.S. GAAP reflects certain financing methods and the capital structure of the reporting company. To provide investors with a better understanding of its operating performance, therefore, in addition to

reporting its net income or loss ARCP also reports funds from operations ("FFO") and adjusted funds from operations ("AFFO").

38.     According to ARCP's 2013 Annual Report, FFO is defined by the National Association of Real Estate Investment Trusts, Inc. as "net income or loss computed in accordance with U.S. GAAP, excluding gains or losses from sales of property but including asset impairment writedowns, plus depreciation and amortization, after adjustments for unconsolidated partnerships and joint ventures." Thus FFO is designed to exclude from net income or loss "such factors as depreciation and amortization of real estate assets and gains or losses from sales of operating real estate assets."

39.     ARCP calculates AFFO by making additional adjustments to FFO to exclude "merger related costs, acquisition-related fees and expenses and other non cash charges" to provide investors more clarity about the Company's operating performance.

40.     ARCP reported AFFO in its quarterly and year-end publicly filed financial statements.   Each of ARCP's Form 10-Ks and Form 10-Qs filed with the SEC during the relevant time period included a table setting forth the items deducted or added to net loss to calculate ARCP's FFO and AFFO.

41.     In its 2013 Annual Report, ARCP described that AFFO was important because removing from FFO merger costs, transaction costs, and costs relating to investment activities allows investors to evaluate the sustainability of ARCP's long-term operating performance and to compare ARCP's operating performance to other companies:

> Changes in the accounting and reporting promulgations under GAAP (for acquisition fees and expenses from a capitalization/depreciation model to an expensed-as-incurred model) that were put into effect in 2009 and other changes to GAAP accounting for real estate subsequent to the establishment of NAREIT's definition of FFO have prompted an increase in cash-settled expenses, specifically acquisition fees and expenses for all

industries as items that are expensed under GAAP, that are typically accounted for as operating expenses. Management believes these fees and expenses do not affect our overall long-term operating performance. While certain companies may experience significant acquisition activity, other companies may not have significant acquisition activity and **management believes that excluding costs such as merger and transaction costs and acquisition related costs from property operating results provides useful information to investors and provides information that improves the comparability of operating results with other companies** who do not have significant merger or acquisition activities. AFFO is not equivalent to our net income or loss as determined under GAAP, and AFFO may not be a useful measure of the impact of long-term operating performance if we continue to have such activities in the future.

We exclude certain income or expense items from AFFO that we consider more reflective of investing activities, other non-cash income and expense items and the income and expense effects of other activities that are not a fundamental attribute of our business plan. These items include unrealized gains and losses, which may not ultimately be realized, such as gains or losses on derivative instruments, gains or losses on contingent valuation rights, gains and losses on investments and early extinguishment of debt. In addition, by excluding non-cash income and expense items such as amortization of above and below market leases, amortization of deferred financing costs, straight-line rent and non-cash equity compensation from AFFO we believe we provide useful information regarding income and expense items which have no cash impact and do not provide us liquidity or require our capital resources. **By providing AFFO, we believe we are presenting useful information that assists investors and analysts to better assess the sustainability of our ongoing operating performance without the impacts of transactions that are not related to the ongoing profitability of our portfolio of properties. We also believe that AFFO is a recognized measure of sustainable operating performance by the REIT industry. Further, we believe AFFO is useful in comparing the sustainability of our operating performance with the sustainability of the operating performance of other real estate companies that are not as involved in activities which are excluded from our calculation.** Investors are cautioned that AFFO should only be used to assess the sustainability of our operating performance excluding these activities, as it excludes certain costs that have a negative effect on our operating performance during the periods in which these costs are incurred.

In addition, we exclude certain interest expenses related to securities that are convertible to common stock as the shares are assumed to have converted to common stock in our calculation of weighted average common shares-fully diluted. As the Company's convertible notes have a cash or stock settlement option and the Company has the ability and intent to settle its convertible notes in cash, the interest expense related to our

convertible notes have not been excluded from AFFO, and accordingly, the shares are not assumed to have converted to common stock in our calculation of weighted average common shares-fully diluted.

In calculating AFFO, we exclude expenses, which under GAAP are characterized as operating expenses in determining operating net income. These expenses are paid in cash by us, and therefore such funds will not be available to distribute to investors. All paid and accrued merger and acquisition fees and certain other expenses negatively impact our operating performance during the period in which expenses are incurred or properties are acquired and will have negative effects on returns to investors, the potential for future distributions, and cash flows generated by us, unless earnings from operations or net sales proceeds from the disposition of other properties are generated to cover the purchase price of the property and certain other expenses. Therefore, AFFO may not be an accurate indicator of our operating performance, especially during periods in which mergers are being consummated or properties are being acquired or certain other expenses are being incurred. AFFO that excludes such costs and expenses would only be comparable to companies that did not have such activities. Further, under GAAP, certain contemplated non-cash fair value and other non-cash adjustments are considered operating non-cash adjustments to net income in determining cash flow from operating activities. In addition, we view fair value adjustments as items which are unrealized and may not ultimately be realized. We view both gains and losses from fair value adjustments as items which are not reflective of ongoing operations and are therefore typically adjusted for when assessing operating performance. Excluding income and expense items detailed above from our calculation of AFFO provides information consistent with management's analysis of the operating performance of the properties. Additionally, fair value adjustments, which are based on the impact of current market fluctuations and underlying assessments of general market conditions, but can also result from operational factors such as rental and occupancy rates, may not be directly related or attributable to our current operating performance. By excluding such changes that may reflect anticipated and unrealized gains or losses, we believe AFFO provides useful supplemental information.

(Emphasis added).

42.     Thus, ARCP represented to investors that AFFO was an important metric that should be considered in determining the sustainability of ARCP's long-term operating performance and in comparing ARCP's operating performance to other companies that may not, unlike ARCP, have significant merger and acquisition activity.

43.     With the release of its financial results at the end of 2013 and after the first and second quarters of 2014, ARCP also issued a "Quarterly Supplement" and an investor presentation in which ARCP provided "guidance" to the public based on its AFFO per share. For example, in connection with the announcement of its financial results for the second quarter of 2014, ARCP used its reported AFFO for the second quarter to determine a "run rate" AFFO for the second half of 2014. Adding this "run rate AFFO" to its reported AFFO for the first half of the year, ARCP publicly stated that its pro forma AFFO per share for 2014 was $1.14, which was supposedly in line with the guidance of $1.13 - $1.19 that ARCP had provided at the beginning of the year with respect to AFFO per share for 2014.

44.     ARCP thus not only showcased AFFO as a number investors should use to assess the sustainability of ARCP's long-term operating performance and in comparing ARCP's operating performance to other companies, but also as a metric for valuing the Company.

45.     Indeed, ARCP made numerous references to AFFO in the press releases accompanying the disclosure of its financial results at the end of 2013 and after the first and second quarters of 2014, always including "increased AFFO" as one of the "highlights" of such results.

46.     Moreover, when commenting on the financial results in those press releases, ARCP's executives frequently touted AFFO:

- "With strong AFFO per share growth, an attractive property portfolio, strong credit tenants bounded by long-term net leases and an attractively positioned balance sheet, we believe ARCP has the catalysts to provide long-term shareholder returns." (Feb. 27, 2014 ARCP Press Release (quoting Defendant Block).)

- "We had a record quarter with earnings coming exactly in line with our expectations of $0.26 AFFO per share, consistent with our previously stated guidance for the year." (May 8, 2014 ARCP Press Release (quoting Defendant Schorsch).)

-14-

- "The daily execution of these collective actions allows us to maintain our 2014 AFFO per share guidance of $1.13 - $1.19, while significantly de-levering the balance sheet and maximizing value for our stockholders." (July 29, 2014 ARCP Press Release (quoting Defendant Kay).)

47.    ARCP thus presented AFFO as a cornerstone of its financial results.

**C.    Schorsch Attempts to Build Investor Confidence in ARCP by Launching his "Self-Management" Initiative**

48.    Schorsch's strategy with respect to ARCP was one of rapid growth through acquisition. According to the *Wall Street Journal*, between 2012 and 2013, ARCP's assets rose nearly 100-fold, from approximately $220 million to $20.5 billion. In September 2014, ARCP told investors that it owned and managed approximately $30 billion of assets.

49.    According to the *Wall Street Journal*, Schorsch's rapid-growth-through-acquisition strategy led to concerns among certain of ARCP's investors. Specifically, questions were raised about the growth strategy because some of the acquisitions involved Schorsch's other companies, which led to multi-million dollar fees being paid to advisory companies controlled by Schorsch. Others criticized Schorsch for overpaying for assets by trying to acquire too much too quickly.

50.    Schorsch attempted to assuage these concerns in 2013 by initiating a campaign to make ARCP "self-managed" (as opposed to being managed by ARC Properties Advisors, LLC, a firm controlled by Schorsch).

51.    Between October 2013 and February 2014, Schorsch brought several senior executives on board. Among others, he hired Lisa Beeson as Chief Operating Officer, David Kay as President, and Lisa McAlister as Chief Accounting Officer. However, Schorsch retained the position of Chairman and CEO for himself, and kept his longtime friend and colleague, Brian Block, in the position of CFO. Block had been working as a senior financial/accounting executive for Schorsch since Schorsch launched American Financial Realty Trust.

**D.**   **Blunders in ARCP's Public Filings Lead to More Questions from Investors and Further Corporate Governance Changes and Proclamations by Schorsch**

52.   Despite ARCP's grandiose pronouncements about the experience and talent of its new management team, public criticism of Schorsch increased when ARCP made two blunders in its public filings in May 2014.

53.   On or about May 19, 2014, ARCP filed a Form 8-K that included pro forma financials reflecting the spin-off of its multi-tenant shopping center business into a publicly traded REIT. However, just two days later, on or about May 21, 2014, ARCP filed another Form 8-K disclosing that its May 19 Form 8-K had contained an inaccurate weighted share count.

54.   Further, on or about May 21, 2014, ARCP filed a Prospectus Supplement for the offering of 100,000,000 shares. In that Prospectus Supplement, ARCP stated that it had incurred $108 million in closing costs and expenses in connection with its recent $1.5 billion acquisition of Red Lobster properties. On or about May 29, 2014, ARCP filed a Form 8-K stating that such closing costs and expenses were in fact only $10.8 million, and that the $108 million figure was the result of "a printer typographical error."

55.   In response to these errors, on or about June 2, 2014, one of the Company's largest shareholders, Marcato Capital Management LP ("Marcato"), sent a letter to ARCP suggesting, among other things, that ARCP slow down its acquisition strategy. With respect to the Red Lobster closing costs and expenses, Marcato stated: "While we are relieved to know that the Company did not spend $108 million in fees to close a $1.5 billion portfolio acquisition, we are alarmed by what appear to be disorderly financial controls exposed by the Company's second material disclosure error in as many weeks." Marcato continued: "We believe the existence of these errors is symptomatic of the larger problem: The Company is engaging in too

many transformative transactions too quickly. . . .  In our opinion, the sum of all these recent actions has undermined management's credibility in the capital markets."

56.     In response to this critique, ARCP set about issuing a series of memos to shareholders and holding shareholder meetings to, among other things, emphasize ARCP's purported focus on corporate governance, shareholder transparency and the adequacy of its internal controls.  ARCP issued these stockholder memoranda on or about June 20, July 8, July 28, and September 10, 2014.

57.     In the June 20, 2014 stockholder memorandum, Schorsch announced that he would be transitioning his CEO role to Kay on October 1, 2014.  Because investors viewed Schorsch as the driving force behind ARCP's expeditious growth, this move was viewed as a stabilizing one for ARCP.

58.     In the July 28, 2014 stockholder memorandum, Schorsch announced that the Company's directors would be adopting a resolution to give ARCP's shareholders the ability to elect the entire Board of Directors at each annual meeting, rather than permitting the directors to classify the Board under the Maryland Unsolicited Takeover Act ("MUTA").  Thus, shareholders would have the ability to make changes to the entire Board if they viewed the Company as heading in the wrong direction.

59.     By issuing numerous stockholder memoranda claiming improved corporate governance and transparency, ARCP conveyed to investors that any flaws in its internal controls that led to the May errors had been corrected and that ARCP was responding to shareholder concerns.

E.     **Plaintiffs Begin Purchasing ARCP Stock**

60.     On July 29, 2014, ARCP released its financial results for the second quarter of 2014.  ARCP reported AFFO of $205.3 million for the second quarter and maintained its AFFO

guidance for 2014 of $1.13 to $1.19 per share. It also provided a year-end estimated run rate for AFFO per share of $1.18 to $1.20 entering 2015, which was based on the reported second quarter AFFO and which assumed no additional acquisitions in 2015.

61.     During the earnings call announcing these results on July 29, 2014, Kay touted the strength of ARCP's operations over the prior quarters and the "transparency" of its second quarter results: "As with any large company there will [be] challenges as well as opportunities but the foundation laid over the past several quarters position [sic] the company for the future success. . . .   We hope you can appreciate the transparency provided this quarter and we continue to focus on supplying the most meaningful information to you about the Company and our guidance."

62.     On that same call, Block made statements about the purported strengthening of ARCP's internal operations with respect to financial reporting:   "[O]ur internal operations continues [sic] to strengthen. The synergy created by the innovation of the Cole team and the adoption of new technology has allowed to be [sic] more timing efficient in our financial reporting. In fact, this enhanced scale allowed us to move up the timing of our 10-Q filing and earnings call as a result of these improvements by roughly a week."

63.     On July 30, 2014, Jet Capital began building a position for Plaintiffs in ARCP common stock. Before purchasing the stock on behalf of Plaintiffs, Anthony Inguaggiato, an analyst at Jet Capital, reviewed, read and relied on the AFFO figures reported by ARCP in the 2013 Annual Report, the 2014 First Quarter Report, and the 2014 Second Quarter Report, as well as ARCP's statements about the adequacy and effectiveness of ARCP's internal controls.

F.     **ARCP Executives Meet with Plaintiffs and then Hold an "Investor Day."
       Vouching for the Integrity and Accuracy of ARCP's Reported Financial
       Results**

64.     On September 9, 2014, Inguaggiato attended the Wells Fargo Securities 3rd
Annual Net Lease REIT Forum at the JW Marriott Essex House in New York City.  During that
conference, Inguaggiato listened to a large group presentation given by Kay and also met with
Kay in a small group session.  Kay stated that he had high conviction in the integrity of ARCP's
financial statements.  Kay also stated that he had been working to improve ARCP's corporate
governance and to improve its transparency.

65.     Following this conference, Plaintiffs, through Jet Capital, continued to build their
position in ARCP common stock.

66.     On or about September 17, 2014, ARCP held an "Investor Day" designed to
"provide investors an opportunity to hear from the Company's management team regarding the
Company's business and its focus on value creation."  Inguaggiato attended the Investor Day on
behalf of Plaintiffs.

67.     At the Investor Day, Schorsch and the other ARCP senior executives repeatedly
touted to investors the purported strength of the new management team, ARCP's increased
investor transparency, and the Company's improved corporate governance and internal controls.

68.     During the Investor Day, Block was asked about the May 2014 reporting blunders
that had led to the Marcato letter.  Block blamed the errors on the volume of acquisitions ARCP
had recently completed and on him being out "on the road" talking to investors.  He then told
investors that since mid-May 2014 he had been working in the office to improve ARCP's finance
and accounting department.  Block insinuated to investors that any prior flaws in ARCP's
internal controls had been fixed, stating: "The proof is in the results in terms of . . . the accuracy
and transparency of the numbers."  Thus, Block told investors that not only was he standing

behind ARCP's recent financial statements, but that the accuracy of those statements demonstrated that the May 2014 blunders were behind the Company.

69. The message that ARCP's senior executives conveyed at the Investor Day was clear: ARCP had adequate and effective internal controls with respect to accounting and financial reporting, and its financial statements were accurate and reliable.

70. Following the Investor Day, Plaintiffs, through Jet Capital, continued to build their position in ARCP common stock.

### G. ARCP Publicly Discloses Improper Accounting in the 2014 First Quarter Report and the Intentional Concealment of That Improper Accounting in the 2014 Second Quarter Report

71. On or about October 29, 2014, ARCP filed a Form 8-K announcing that its financial statements and other financial information in its 2013 Annual Report, its 2014 First Quarter Report and its 2014 Second Quarter Report could no longer be relied upon.

72. ARCP stated that on September 7, 2014, concerns regarding accounting practices and other matters were reported to ARCP's audit committee. The audit committee then conducted an investigation with the assistance of independent counsel and forensic accounting experts.

73. The audit committee's preliminary investigation found that the AFFO for the first quarter of 2014 had been overstated due to an "error," and that that "error" had been intentionally concealed in the reported financials for the second quarter of 2014. The Company stated:

> [B]ased on the preliminary findings of the investigation, the Audit Committee believes that the Company incorrectly included certain amounts related to its non-controlling interests in the calculation of adjusted funds from operations ("AFFO"), a non-U.S. GAAP financial measure, for the three months ended March 31, 2014 and, as a result, overstated AFFO for this period. The Audit Committee believes that this error was identified but intentionally not corrected, and other AFFO and

financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014.

74.     The Company also announced that the audit committee had asked Block and McAlister to resign as a result of its findings.

75.     The Company further announced that it needed to reevaluate its internal controls with respect to financial reporting:   "In light of the preliminary findings of the Audit Committee's investigation, the Company is reevaluating its internal control over financial reporting and its disclosure controls and procedures.   The Company intends to make the necessary changes to its control environment to remediate all control deficiencies that are identified as a result of the ongoing investigation and the restatement process."

76.     Attached to the Form 8-K were adjusted financial results for the first and second quarters of 2014.   The adjusted AFFO from the 2014 First Quarter Report was presented as follows (with amounts in thousands):

| AFFO (Presented on a Net Basis) | Three Months Ended March 31, 2014 |
| --- | --- |
| AFFO – Originally Reported | $147,389 |
| Preliminary Adjustments | (17,638) |
| AFFO - Adjusted | $129,751 |

The AFFO from the 2014 Second Quarter Report was presented as follows (with amounts in thousands):

| AFFO (Presented on a Gross Basis) | Three Months Ended March 31, 2014 | Three Months Ended June 30, 2014 | Six Months Ended June 30, 2014 |
| --- | --- | --- | --- |
| AFFO – Originally Reported | $147,780* | $205,278 | $353,058 |
| Preliminary U.S GAAP Adjustments | - | (9,242) | (9,242) |
| Preliminary Adjustments – AFFO Only | (11,974) | (1,627) | (13,601) |
| AFFO - Adjusted | $135,806 | $194,409 | $330,215 |

\* *Represents AFFO as reported for the six months ended June 30, 2014 less AFFO as reported for the three months ended June 30, 2014*

77.     Later that day, David Kay hosted an investor conference call to discuss the corporate disclosure.  Kay revealed the following during the call:

- On September 7, 2014, an unidentified ARCP employee contacted the audit committee.

- As a result of this contact, the audit committee retained Weil Gotshal and Ernst & Young to conduct an investigation.

- The audit committee reported the preliminary results of the investigation to non-implicated executives on Friday, October 24, 2014.

- ARCP calculated AFFO for the first quarter of 2014 on a "net basis."  That is, ARCP calculated its net loss based on ARCP's approximately 96.5% equity interest in the Operating Partnership (taking the net loss of the Operating Partnership and multiplying it by approximately 96.5%).  In order to make an apples-to-apples comparison when calculating AFFO on a net basis, ARCP also should have multiplied the adjustments to net loss by approximately 96.5% to reflect ARCP's equity interest in the Operating Partnership.

However, ARCP neglected to calculate the adjustments to net loss based on ARCP's approximately 96.5% equity interest in the Operating Partnership, and instead made the adjustments to net loss on a gross basis, that is, based on the full results of the Operating Partnership. As a result, ARCP added back more adjustments to net loss than it should have in order to properly calculate ARCP's AFFO, which resulted in an improperly inflated AFFO.

- The accounting "error" in the first quarter financials improperly increased AFFO for the first quarter of 2014 by $17.6 million, artificially inflating AFFO to $0.26 per share when it should have been only $0.23 per share.

- In the second quarter of 2014, ARCP calculated its AFFO on a "gross basis" rather than on a net basis. When calculating AFFO on a gross basis, net loss and adjustments to net loss are based on the full results of the Operating Partnership (neither net loss nor the adjustments to net loss were multiplied by ARCP's approximately 96.5% interest in the Operating Partnership). This switch to the gross basis would reveal, however, that in the prior quarter ARCP had calculated net loss on a net basis but adjusted the net loss to derive AFFO on a gross basis. To conceal the mistakes from the previous quarter that would have been revealed by calculating AFFO on a gross basis, ARCP decided to move improperly approximately $10.5 million of expenses actually accrued in the second quarter of 2014 to the third quarter of 2014. By doing that, it improperly lowered the net loss for the second quarter of 2014 commensurate with the overstated AFFO for the first quarter of 2014.

78.     In describing the intentional concealment committed with respect to the second quarter results, Kay commented: "The best way I can describe what happened there is that we don't have bad people; we had some bad judgment there."

79.     In describing who was responsible, Kay stated: "[W]e had two employees [Block and McAlister] which [sic] have resigned as a result of the effects of that calculation and the nondisclosure of the error in the first quarter. *None of the executives that are currently at the Company have been implicated during the investigation related to the concealment of the error.*" (Emphasis added).

80.     Kay also told investors that he did not personally learn of the improper accounting and fraudulent concealment until October 24, 2014, and that he "100%" expected to stay with the Company.

81.     Following these disclosures, ARCP's stock price lost more than 35% of its value.

**H.     ARCP Fires Schorsch, Kay and Beeson and McAlister Files a Defamation Lawsuit**

82.     Unfortunately for investors, ARCP's and Kay's disclosures on October 29, 2014, failed to reveal the full extent of what had occurred and who had been involved.

83.     On or about December 15, 2014, ARCP filed a Form 8-K announcing that on December 12, 2014, Schorsch had resigned as Chairman of the Company and the Operating Partnership. Furthermore, Schorsch "also [had] resigned from all other employment and board positions that he held at the Company and its subsidiaries and certain Company-related entities (including the non-traded real estate investment trusts sponsored or managed by the Company or its affiliates)."

84.     The Company also announced in that same filing that on December 15, 2014, Kay had resigned as CEO and Beeson had resigned as President and COO of ARCP. The Company appointed its lead independent director, William Stanley, as interim CEO and Chairman.

85.     ARCP's stock again declined precipitously upon the disclosure of this information.

86.     The reason for the sudden departures of Schorsch, Kay and Beeson was revealed in a verified complaint filed by McAlister in the Supreme Court of the State of New York on or about December 18, 2014. In that verified complaint, McAlister asserted claims for defamation against ARCP, Schorsch and Kay in connection with the announcement of her termination from ARCP.

87.     McAlister signed a sworn verification affirming the truth of her allegations.

88.     According to McAlister, in or around February 2014, ARCP's Director of External Reporting, Ryan Steel, informed Beeson that in the 2013 Annual Report ARCP was

misrepresenting AFFO.  McAlister brought this misrepresentation to the attention of Block.
Block and McAlister then met with Kay to discuss the misrepresentation.  Kay told McAlister
and Block not to change or correct the misstatement, thus resulting in a material overstatement of
AFFO in the 2013 Annual Report filed on or about February 27, 2014.

89.     The following quarter, Kay and Schorsch specifically directed that the Company
continue to use this improper accounting in the 2014 First Quarter Report, resulting in another
material overstatement of AFFO.

90.     Then, according to McAlister's sworn pleading, on or around July 28, 2014, the
very same day that Schorsch issued a stockholder memorandum titled "Executing on our
Continuing Commitment to Enhance Corporate Governance," Schorsch directed Block during a
conference call with Block and McAlister to switch to calculating AFFO on a gross basis and to
make fraudulent adjustments to conceal the improper accounting.

91.     In sum, McAlister asserted in a sworn court document that:  (1) Kay, Block and
McAlister knew of the misstatements in the 2013 Annual Report, but Kay instructed Block and
McAlister not to correct them; (2) the improper accounting with respect to AFFO was repeated
in the 2014 First Quarter Report at the specific direction of Schorsch and Kay, and thus the 2014
First Quarter Report also misstated AFFO; and (3) in July 2014 Schorsch directed Block to make
improper adjustments to ARCP's numbers in the 2014 Second Quarter Report to conceal the
misstatements that had been made in the 2013 Annual Report and the 2014 First Quarter Report.

## DEFENDANTS' FALSE AND MISLEADING STATEMENTS

### A.     ARCP's 2013 Annual Report

92.     ARCP filed its 2013 Annual Report on or about February 27, 2014.  It was signed
by, among others, Schorsch, Kay, Block and McAlister, and the requisite SOX certifications
were made by Schorsch and Block.  The 2013 Annual Report contained materially false and

misleading statements concerning ARCP's financial results and the adequacy of its internal controls.

### 1.    False and Misleading Statements Concerning ARCP's Financial Results

93.    In Management's Discussion and Analysis of Financial Condition and Results of Operations (or the "MD&A" portion of the 2013 Annual Report) ARCP stated that its AFFO for the year ending December 31, 2013, was $163,915,000.  This statement was materially false and misleading because the AFFO was actually less than $163,915,000.  As stated by McAlister in her verified complaint, the figure provided by ARCP was inflated due to its failure to account for the fact that ARCP did not own 100% of the equity interests in the Operating Partnership.

94.    In their respective certifications to the 2013 Annual Report, Schorsch and Block both stated as follows:

> Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

> Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report . . . .

95.    Schorsch and Block further certified pursuant to Section 1350 of Chapter 63 of Title 18 of the United States Code that: "The quarterly report on Form 10-Q of the Company, which accompanies this Certificate, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and all information contained in this quarterly

report fairly presents, in all material respects, the financial condition and results of operations of the Company."[1]

96.      These statements were materially false and misleading because, as explained above, ARCP had overstated its AFFO for the year ending December 31, 2013.

### 2.     False and Misleading Statements Concerning the Adequacy of ARCP's Internal Controls

97.      In the MD&A, ARCP stated the following with respect to its internal controls and procedures:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Exchange Act, management, with the participation of our Chief Executive Officer and Chief Financial Officer, has evaluated the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Annual Report on Form 10-K. Based on such evaluation, our Chief Executive Officer and Chief Financial Officer have concluded, as of the end of such period, that our disclosure controls and procedures are effective in recording, processing, summarizing and reporting, on a timely basis, information required to be disclosed by us in our reports that we file or submit under the Exchange Act.
>
> **Management's Annual Report on Internal Control over Financial Reporting**
>
> Our management is responsible for establishing and maintaining adequate internal control over financial reporting. as defined in Rule 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934, as amended. Our internal control over financial reporting is designed to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements in accordance with generally accepted accounting principles.
>
> . . .

---

[1]   The fact that Schorsch's and Block's certifications to the 2013 Annual Report incorrectly referred to a "quarterly report on Form 10-Q" instead of an "annual report on Form 10-K" further proves that Schorsch and Block did not carefully review and consider their certifications before they signed them.

Our management assessed the effectiveness of our internal control over financial reporting as of December 31, 2013. In making this assessment, our management used the criteria set forth by the Committee of Sponsoring Organizations of the Treadway Commission ("COSO") in the 1992 *Internal Control-Integrated Framework*.

. . .

Based on our assessment, our management believes that, as of December 31, 2013, our internal control over financial reporting is effective.

The effectiveness of our internal control over financial reporting as of December 31, 2013 has been audited by Grant Thornton LLP, an independent registered public accounting firm, as stated in their report included in this Annual Report on Form 10-K.

### Changes in Internal Control Over Financial Reporting

During the fourth quarter of fiscal year ended December 31, 2013, there were no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

98.     Further, in their respective certifications to the 2013 Annual Report, Schorsch and

Block both stated as follows:

The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

99.     These statements were materially false and misleading.   Whatever internal controls ARCP had in place as of December 31, 2013, were inadequate and ineffective.  In or around February 2014, Kay, Block and McAlister learned of improper accounting with respect to ARCP's AFFO in the 2013 Annual Report.  Kay directed Block and Schorsch not to correct the improper accounting.  If ARCP had had adequate internal controls, Kay, Block and McAlister would not have been able to conceal the improper accounting, and the material misstatement of ARCP's AFFO in the 2013 Annual Report would not have occurred.

**B.     ARCP's 2014 First Quarter Report**

100.    ARCP filed its 2014 First Quarter Report on or about May 8, 2014.  The report and the requisite SOX certifications were signed by Schorsch and Block.  Like the 2013 Annual

Report, the 2014 First Quarter Report contained materially false and misleading statements concerning ARCP's financial results and the adequacy of its internal controls.

### 1.    *False and Misleading Statements Concerning ARCP's Financial Results*

101.    In Management's Discussion and Analysis of Financial Condition and Results of Operations (or the "MD&A" portion of the 2014 First Quarter Report) ARCP stated that its AFFO for the quarter ending March 31, 2014, was $147,389,000.  This statement was materially false and misleading because the AFFO was actually $129,751,000.  The figure provided by ARCP was inflated due to its failure to account for the fact that ARCP did not own 100% of the equity interests in the Operating Partnership.  ARCP failed to discount its adjustments to its net loss for the first quarter of 2014 to account for its approximately 96.5% ownership interest of the Operating Partnership.

102.    In their respective certifications to the 2014 First Quarter Report, Schorsch and Block both stated as follows:

> Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

> Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report . . . .

103.    Schorsch and Block further certified pursuant to Section 1350 of Chapter 63 of Title 18 of the United States Code that: "The quarterly report on Form 10-Q of the Company, which accompanies this Certificate, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and all information contained in this quarterly

report fairly presents, in all material respects, the financial condition and results of operations of the Company."

104.    These statements were materially false and misleading because, as explained above, ARCP had overstated its AFFO for the quarter ending March 31, 2014.

### 2.    False and Misleading Statements Concerning the Adequacy of ARCP's Internal Controls

105.    In the MD&A, ARCP stated the following with respect to its internal controls and procedures:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act, as amended (the "Exchange Act"), we, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.
>
> No change occurred in our internal controls over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) during the three months ended March 31, 2014 that has materially affected, or is reasonably likely to materially affect, our internal controls over financial reporting.

106.    Further, in their respective certifications to the 2014 First Quarter Report, Schorsch and Block both stated as follows:

> The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:
>
> (a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

107. These statements were materially false and misleading. Whatever internal controls ARCP had in place as of March 31, 2014, were inadequate and ineffective. Kay and Schorsch specifically directed that the improper accounting with respect to AFFO contained in the 2013 Annual Report be continued in the 2014 First Quarter Report. ARCP did not have the internal controls necessary to prevent Kay and Schorsch – ARCP's highest-ranking executive officers – from directing that the AFFO be materially misstated in the 2014 First Quarter Report.

Moreover, they knew the internal controls were inadequate because they had directed the misstatements to be made.

### C.   ARCP's 2014 Second Quarter Report

108.   ARCP filed its 2014 Second Quarter Report on or about July 29, 2014.  The report was signed by Schorsch, Block and McAlister, and the requisite SOX certifications were made by Schorsch and Block.  Like the 2013 Annual Report and the 2014 First Quarter Report, the 2014 Second Quarter Report contained materially false and misleading statements concerning ARCP's financial results and the adequacy of its internal controls.

### 1.   *False and Misleading Statements Concerning ARCP's Financial Results*

109.   In its 2014 Second Quarter Report, ARCP changed its calculation of its AFFO from the net method to the gross method.  In Management's Discussion and Analysis of Financial Condition and Results of Operations (or the "MD&A" portion of the 2014 Second Quarter Report) ARCP stated that its AFFO for the quarter ending June 30, 2014, was $205,278,000.  This statement was materially false and misleading because the AFFO was actually $194,409,000.  Moreover, ARCP stated that its AFFO for the three months ending March 31, 2014 was $147,780,000.  This statement was materially false and misleading because the AFFO for the first three months of the year, on a gross basis, should have been $135,806,000.  The figures provided by ARCP were falsely inflated due to the improper deferral by ARCP of expenses until the third quarter that accrued during the second quarter of 2014.  This fraudulent concealment of expenses also had the effect of materially decreasing the net loss reported by the Company under U.S. GAAP for the three and six months ended June 30, 2014.  ARCP reported that its net loss for the three months ended June 30, 2014 was $43,265,000, and that its net loss for the six months ended June 30, 2014 was $363,920,000.  ARCP's net loss was actually greater than those amounts.

110.    In their respective certifications to the 2014 Second Quarter Report, Schorsch and Block both stated as follows:

> Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

> Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report . . . .

111.    Schorsch and Block further certified pursuant to Section 1350 of Chapter 63 of Title 18 of the United States Code that:  "The quarterly report on Form 10-Q of the Company, which accompanies this Certificate, fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934, and all information contained in this quarterly report fairly presents, in all material respects, the financial condition and results of operations of the Company."

112.    These statements were materially false and misleading because, as explained above, ARCP had overstated its AFFO and understated its net loss for the three and six months ending June 30, 2014.

### 2.    *False and Misleading Statements Concerning the Adequacy of ARCP's Internal Controls*

113.    In the MD&A, ARCP stated the following with respect to its internal controls and procedures:

> In accordance with Rules 13a-15(b) and 15d-15(b) of the Securities Exchange Act, as amended (the "Exchange Act"), we, under the supervision and with the participation of our Chief Executive Officer and Chief Financial Officer, carried out an evaluation of the effectiveness of our disclosure controls and procedures (as defined in Rules 13a-15(e) and 15d-15(e) of the Exchange Act) as of the end of the period covered by this

Quarterly Report on Form 10-Q and determined that the disclosure controls and procedures are effective.

No change occurred in our internal controls over financial reporting (as defined in Rule 13a-15(f) and 15d-15(f) of the Exchange Act) during the three months ended March 31, 2014 that has materially affected, or is reasonably likely to materially affect, our internal controls over financial reporting.

114.    Further, in their respective certifications to the 2014 Second Quarter Report, Schorsch and Block both stated as follows:

The registrant's other certifying officer and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a) Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b) Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c) Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d) Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

The registrant's other certifying officer and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the

registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a) All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b) Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

115.   These statements were materially false and misleading.   Whatever internal controls ARCP had in place as of June 30, 2014, were inadequate and ineffective.   Schorsch knew the internal controls were inadequate because he directed Block and McAlister to cover up the improper accounting from the 2013 Annual Report and the 2014 First Quarter Report by fraudulently deferring expenses that accrued in the second quarter.   Indeed, ARCP admitted in its October 29, 2014 Form 8-K that the Company's improper accounting in its public filings had been intentionally concealed, and fired the Company's CFO and CAO as a result.   ARCP's internal controls with respect to financial reporting were utterly inadequate to prevent the fraudulent concealment of improper accounting by ARCP's highest ranking officials.

### D.   ARCP's Earnings Call Concerning the Second Quarter Results

116.   On or about July 29, 2014, ARCP held an earnings call in connection with the release of its financial results for the second quarter of 2014.   During that call, Kay touted the strength of ARCP's operations over the prior quarters and the "transparency" of its second quarter results: "As with any large company there will [be] challenges as well as opportunities but the foundation laid over the past several quarters position [*sic*] the company for the future success. . . .   We hope you can appreciate the transparency provided this quarter and we continue to focus on supplying the most meaningful information to you about the Company and our guidance."

117.    Kay's statements were materially false and misleading. Kay knew in or around February 2014 that the AFFO in the 2013 Annual Report was overstated due to improper accounting, and he directed ARCP's CFO and CAO not to correct or disclose the improper accounting. He, along with Schorsch, then directed ARCP to continue the improper accounting in the 2014 First Quarter Report. Thus, Kay's assertion on July 29 that the Company had built a solid foundation over the prior quarters and that the Company was being transparent in its financial reporting were not true.

118.    On the same earnings call, Block made statements about the purported strengthening of ARCP's internal operations with respect to financial reporting: "[O]ur internal operations continues [sic] to strengthen. The synergy created by the innovation of the Cole team and the adoption of new technology has allowed to be [sic] more timing efficient in our financial reporting. In fact, this enhanced scale allowed us to move up the timing of our 10-Q filing and earnings call as a result of these improvements by roughly a week."

119.    This statement was materially false and misleading because of the improper accounting and fraudulent concealment in ARCP's financial statements. Block knew that the 2013 Annual Report and the 2014 First Quarter Report contained inflated AFFO figures due to improper accounting, and he knew that Schorsch had ordered him to conceal that improper accounting in the 2014 Second Quarter Report by overstating AFFO and understating net loss for the three and six months ended June 30, 2014. Block, however, misled investors on July 29 to believe that ARCP had strengthened its accounting and financial reporting department, when in fact ARCP's financial statements fraudulently overstated its AFFO with the knowledge of its senior management, including its top financial and accounting executives.

-37-

**E.** **The Wells Fargo Securities 3rd Annual Net Lease REIT Forum in September 2014**

120.    On or about September 9, 2014, Plaintiffs, through Jet Capital, attended the Wells Fargo Securities 3rd Annual Net Lease REIT Forum in New York City.  During this meeting, Kay stated that he had high conviction in the integrity of ARCP's financial statements.

121.    These assurances from ARCP's President and soon-to-be CEO were important to Plaintiffs in making investment decisions.  The blunders in ARCP's May 2014 public filings had led to a lack of investor confidence in the Company's public reporting.  Kay's expressed conviction in the integrity of ARCP's financial statements provided reassurance to Plaintiffs that ARCP had turned the corner.

122.    However, Kay's statements were materially false and misleading.  Kay knew in or around February 2014 that the AFFO in the 2013 Annual Report was overstated due to improper accounting, and he directed ARCP's CFO and CAO not to correct or disclose the improper accounting.  He, along with Schorsch, then directed ARCP to continue the improper accounting in the 2014 First Quarter Report.  Thus, Kay was fully aware that ARCP's financial statements were false, and his expressed conviction in the "integrity" of ARCP's numbers was a lie.

**F.** **ARCP's Investor Day in September 2014**

123.    On or about September 17, 2014, ARCP held its Investor Day, which was attended by Plaintiffs.  Schorsch, Kay, Block and McAlister were all present and spoke at length during the Investor Day.

124.    When asked about whether the May 2014 reporting blunders were a thing of the past, Block insinuated that they were, and stated:  "The proof is in the results in terms of . . . the accuracy and transparency of the numbers."

125.  This statement was materially false and misleading because as of September 17, 2014, ARCP's financial results were not accurate.  Block knew that the 2013 Annual Report and the 2014 First Quarter Report contained inflated AFFO figures due to improper accounting, and he knew that Schorsch had ordered him to conceal that improper accounting in the 2014 Second Quarter Report by overstating AFFO and understating net loss for the three and six months ended June 30, 2014.

## G.  ARCP's October 29, 2014 Form 8-K and Kay's Statements on the Investor Conference Call Concerning that Form 8-K

126.  On or about October 29, 2014, ARCP issued a Form 8-K stating that:

> the Audit Committee believes that the Company incorrectly included certain amounts related to its non-controlling interests in the calculation of adjusted funds from operations ("AFFO"), a non-U.S. GAAP financial measure, for the three months ended March 31, 2014 and, as a result, overstated AFFO for this period. The Audit Committee believes that this error was identified but intentionally not corrected, and other AFFO and financial statement errors were intentionally made, resulting in an overstatement of AFFO and an understatement of the Company's net loss for the three and six months ended June 30, 2014.

> As discussed in Item 5.02 of this Current Report on Form 8-K, at the request of the Audit Committee, the Company's Chief Financial Officer and Chief Accounting Officer have resigned.

> Nothing has come to the attention of the Audit Committee that leads it to believe that there are any errors in the Company's previously issued audited consolidated financial statements contained in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2013. However, the Audit Committee has expanded its investigation to encompass the Company's audited consolidated financial statements for the fiscal year ended December 31, 2013 in light of the fact that the Company's former Chief Financial Officer and former Chief Accounting Officer had key roles in the preparation of those financial statements.

127.  Later that day, Kay held a conference call with investors in which he stated the following:

> "[W]e had two employees [Block and McAlister] which [sic] have resigned as a result of the effects of that calculation and the nondisclosure

of the error in the first quarter. None of the executives that are currently at the Company have been implicated during the investigation related to the concealment of the error."

128.    Kay also told investors that he did not personally learn of the accounting fraud until October 24, 2014.

129.    These statements were materially false and misleading because they did not reveal the extent of the fraud that had been committed and all of the individuals who were involved in perpetrating the fraud. In or around February 2014, Kay, Block and McAlister all knew of the improper accounting with respect to AFFO in the 2013 Annual Report, and Kay directed Block and McAlister not to disclose or correct the improper accounting. Schorsch and Kay specifically directed ARCP to continue that improper accounting and materially overstate AFFO in the 2014 First Quarter Report. Schorsch then directed Block to cover up the prior improper accounting in the 2014 Second Quarter Report. Thus, ARCP's and Kay's statements that the improper accounting was limited to the 2014 First Quarter Report and the 2014 Second Quarter Report, and that Block and McAlister were the only executives involved in the improper accounting and fraudulent concealment, were materially false and misleading.

## DEFENDANTS' SCIENTER

130.    Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

131.    Defendants Kay, Block and McAlister acted with scienter with respect to the materially false and misleading statements in the 2013 Annual Report. Defendants Schorsch, Kay, Block and McAlister acted with scienter with the respect to all of the other materially false and misleading statements discussed above that were made subsequent to the 2013 Annual Report.

132.    As the President of ARCP, Kay took control of the day-to-day operations of ARCP. According to McAlister's verified complaint, Block and McAlister made Kay aware of the improper accounting in the 2013 Annual Report with respect to AFFO in or around February 2014. However, Kay directed Block and McAlister not to correct or disclose the improper accounting. Kay then directed ARCP to continue to use the improper accounting with respect to AFFO in the 2014 First Quarter Report. Moreover, due to his day-to-day control over ARCP, Kay knew, or was reckless in not knowing, that Schorsch directed Block and McAlister to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report by converting to the gross method of reporting AFFO and fraudulently deferring the accrual of second quarter expenses in the 2014 Second Quarter Report. Kay knew that ARCP's financial reporting was not accurate when he made false and misleading statements to Plaintiffs in September 2014. Kay also knew that the accounting fraud at ARCP extended beyond Block and McAlister when he stated otherwise on or about October 29, 2014. Kay's scienter is further demonstrated by the fact that he was asked to step down from his position with ARCP on or about December 15, 2014.

133.    As the CFO of ARCP, Block bore the ultimate responsibility for ARCP's finances. According to McAlister's verified complaint, Block learned of the improper accounting in the 2013 Annual Report with respect to AFFO in or around February 2014, yet Block did nothing to correct the accounting error in the 2013 Annual Report or to prevent the improper accounting being repeated in the 2014 First Quarter Report. In fact, Block certified the accuracy of the 2013 Annual Report and the 2014 First Quarter Report, as well as the adequacy of ARCP's internal controls, when he knew that those documents contained improper accounting. At Schorsch's behest, Block then attempted to conceal the improper accounting by

converting to the gross method of reporting AFFO and fraudulently deferring the accrual of second quarter expenses in the 2014 Second Quarter Report, which he again certified to be accurate. Block was thus fully aware of the inaccuracy of ARCP's financial reports when he vouched for their accuracy during ARCP's Investor Day on or about September 17, 2014. Block's scienter is further demonstrated by the audit committee's request that he leave ARCP following the audit committee's preliminary investigation into the accounting fraud in September and October of 2014.

134.   As the CAO of ARCP, McAlister was in charge of ARCP's accounting. By her own judicial admission, McAlister became aware of the improper accounting with respect to AFFO in the 2013 Annual Report in or around February 2014, yet she did nothing to correct the accounting error in the 2013 Annual Report, which she signed, or to prevent the improper accounting from being repeated in the 2014 First Quarter Report. McAlister also was fully aware of Schorsch's direction to Block to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report by converting to the gross method of reporting AFFO and fraudulently deferring the accrual of second quarter expenses in the 2014 Second Quarter Report. McAlister willfully signed the 2014 Second Quarter Report despite knowing of the fraudulent accounting contained in such report. McAlister's scienter is further demonstrated by the audit committee's request that she leave ARCP following the audit committee's preliminary investigation into the accounting fraud in September and October of 2014.

135.   As the founder, CEO, and Chairman of ARCP, Schorsch was intimately familiar with, and exercised substantial control over, every aspect of ARCP's business. Indeed, Block, Schorsch's longtime friend and colleague, described Schorsch at the September 2014 Investor Day as a "micromanager." Although he did not learn of the improper accounting being used in

-42-

ARCP's 2013 Annual Report with respect to AFFO at the same time as Kay, Block and McAlister, Schorsch later directed ARCP to commit improper accounting with respect to AFFO in ARCP's 2014 First Quarter Report. Despite directing this improper accounting, Schorsch certified the accuracy of ARCP's financial reporting and the adequacy of its internal controls in the 2014 First Quarter Report. Moreover, according to McAlister's verified complaint, on or about July 28, 2014, Schorsch willfully directed Block to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report by converting to the gross method of reporting AFFO and fraudulently deferring the accrual of second quarter expenses in the 2014 Second Quarter Report. Even though he instructed his CFO to commit financial fraud, Schorsch still signed a certification verifying the accuracy of the 2014 Second Quarter Report and the adequacy of ARCP's internal controls. Schorsch's scienter is further demonstrated by ARCP's independent directors' decision to sever all ties between ARCP and Schorsch on or about December 12, 2014.

## SCHORSCH'S NEGLIGENCE WITH RESPECT TO THE 2013 ANNUAL REPORT

136. Plaintiffs do not allege that Defendant Schorsch acted with scienter with respect to the false and misleading statements in the 2013 Annual Report because Plaintiffs do not have any evidence that he had contemporaneous knowledge that the AFFO in the 2013 Annual Report was materially overstated due to improper accounting.

137. However, for purposes of Plaintiffs' claims under Section 18 of the Exchange Act, Schorsch was negligent in making statements in the 2013 Annual Report concerning the accuracy of the financial information presented therein and the adequacy of ARCP's internal controls.

138. Had Schorsch acted with the standard of care required of a CEO and Chairman of a public company, he would have been aware that AFFO in the 2013 Annual Report was

materially overstated due to improper accounting and that ARCP's internal controls were inadequate.

## PLAINTIFFS' ACTUAL RELIANCE

139.    On July 30, 2014, the day after ARCP released its 2014 Second Quarter Report, Plaintiffs began purchasing ARCP common stock through Jet Capital.

140.    Prior to making the decision to purchase, Anthony Inguaggiato actually read, reviewed and relied upon the 2013 Annual Report, the 2014 First Quarter Report, and the 2014 Second Quarter Report, including the reported AFFO figures in those reports, as well as ARCP's statements about the adequacy and effectiveness of ARCP's internal controls.

141.    Inguaggiato also read and relied upon the statements made by Kay and Block during the ARCP earnings call on or about July 29, 2014.

142.    Inguaggiato listened to and relied upon statements made by Kay at Wells Fargo Securities 3rd Annual Net Lease REIT Forum on or about September 9, 2014.  Following that conference, Jet Capital caused Plaintiffs to purchase more ARCP common stock.

143.    Inguaggiato listened to and relied upon statements made by Kay and Block at ARCP's Investor Day on or about September 17, 2014.  Following the Investor Day, Jet Capital caused Plaintiffs to purchase more ARCP common stock.

144.    Plaintiffs continued to purchase ARCP common stock, in reliance on the aforementioned statements, through October 27, 2014.

## LOSS CAUSATION

145.    During the period when ARCP filed its 2013 Annual Report, its 2014 First Quarter Report, its 2014 Second Quarter Report, and up until October 29, 2014, the Company's shares traded in the $11-to-$14 per share range.

146.   On October 28, 2014, ARCP's common stock closed at a price of $12.38 per share.

147.   On October 29, 2014, ARCP filed a Form 8-K and Kay held an investor conference call in which the improper accounting with respect to the 2014 First Quarter Report and the fraudulent concealment of that improper accounting in the 2014 Second Quarter Report were revealed.   The October 29 disclosure blamed Block and McAlister for the financial misstatements.  Prior to the October 29 disclosure, Plaintiffs had not sold any of the ARCP stock that they purchased between July 30, 2014 and October 27, 2014.

148.   The October 29 partial corrective disclosure caused the following drops in ARCP's stock price:  on October 29, 2014, ARCP's common stock closed at a price of $10.00 per share; on October 30, 2014, ARCP's common stock closed at a price of $9.42 per share; on October 31, 2014, ARCP's common stock closed at a price of $8.87 per share; and on November 3, 2014, ARCP's common stock closed at a price of $7.85 per share.

149.   By December 12, 2014, ARCP's common stock had risen back to close at $8.99 per share.  However, on December 15, 2014, ARCP issued another partial corrective disclosure concerning the resignations of Schorsch, Kay and Beeson.

150.   The December 15, 2014 partial corrective disclosure caused the following drops in ARCP's stock price:  on December 15, 2014, ARCP's common stock closed at a price of $8.23 per share; and on December 16, 2014, ARCP's common stock closed at a price of $7.70 per share.

151.   On December 17, 2014, ARCP's common stock closed at a price of $8.41 per share.  The following day, McAlister filed her verified complaint in New York State Supreme

Court, disclosing the full extent of the improper accounting and fraudulent concealment, as well as Kay's and Schorsch's involvement.

152.   The December 18, 2014 corrective disclosure caused ARCP's common stock to drop to $8.07 per share at closing on December 18, 2014, and $8.02 per share at closing on December 19, 2014.

153.   Moreover, the aforementioned drops in stock price reflected the gradual materialization of the risk that ARCP did not have adequate internal controls to ensure the integrity and accuracy of its financial reporting.

154.   In light of general investor concerns about the quality of the Company's accounting functions, internal controls and corporate governance (as highlighted by several embarrassing reporting mishaps), ARCP desperately sought to reassure investors that it had righted the ship and that its internal control systems were above reproach.   In doing so, the Company concealed the risk that its utter lack of meaningful controls would enable corrupt members of senior management to mislead investors by doctoring ARCP's financial results. Beginning with the October 29, 2014 Form 8-K, that risk gradually materialized, culminating in the resignations of senior management and the revelation of their complicity in deliberate accounting fraud, and causing the Company's stock price to decline by $4.53 per share between October 29 and November 3, 2014, by $1.29 per share between December 15 and December 16, 2014, and by $0.39 per share between December 18 and December 19, 2014.

### NO SAFE HARBOR

155.   The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The specific statements pleaded herein were not "forward-looking statements" nor were they identified as "forward-looking statements" when made.   Nor was it stated with respect to any of

the statements forming the basis of this Complaint that actual results "could differ materially from those projected." To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of ARCP who knew that those statements were false when made.

## FIRST CAUSE OF ACTION

### Violations of Section 18 of the Exchange Act
### Misstatements and Omissions in 2013 Annual Report
### Against Defendant Schorsch

156.    Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

157.    As alleged herein, Defendant Schorsch negligently caused statements to be made in the Company's 2013 Annual Report (filed with the SEC pursuant to the rules or regulations of the Exchange Act), which statements were, at the time and in light of the circumstances under which made, false or misleading with respect to material facts.

158.    In purchasing ARCP stock, Plaintiffs' investment team actually read, and had direct eyeball reliance on, the statements in the Company's 2013 Annual Report set forth above.

159.    Specifically, on or about July 29, 2014, Anthony Inguaggiato read ARCP's statement that AFFO for the year ending December 31, 2013 was $163,915,000. In accordance

with ARCP's advice to its investors, Inguaggiato actually relied on AFFO as a useful metric to analyze the sustainability of ARCP's long-term operating performance and to compare ARCP's operating performance to other companies.

160.   Moreover, Inguaggiato actually relied on Schorsch's statements in the 2013 Annual Report concerning the adequacy of ARCP's internal controls with respect to financial reporting.

161.   In ignorance of the falsity of Defendant Schorsch's statements or of the true facts, Plaintiffs purchased ARCP's securities in actual, eyeball reliance upon Defendants' representations.

162.   Defendant Schorsch's materially false or misleading statements artificially inflated the price of ARCP securities.

163.   Had they known the true facts, Plaintiffs would not have purchased the ARCP securities and/or would not have purchased them at the inflated price they paid.

164.   Upon disclosure of the true facts, the price of the ARCP dropped, and Plaintiffs suffered damages in an amount to be proven at trial.

165.   By reason of the foregoing, Defendants are liable to Plaintiffs for violations of Section 18 of the Exchange Act, 15 U.S.C. §78r.

166.   Plaintiffs have brought this claim within one year of discovery of the violations alleged herein, and within three years of the accrual of this cause of action.

## SECOND CAUSE OF ACTION

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5
### Misstatements and Omissions in 2013 Annual Report
### Against Defendants ARCP, Kay, Block and McAlister

167.    The Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

168.    Defendants ARCP, Kay, Block and McAlister knew, or were reckless in failing to know, of the material misrepresentations contained in, and the material omissions from, the 2013 Annual Report.

169.    Defendants ARCP, Kay, Block and McAlister, with knowledge of or reckless disregard for the truth, made, disseminated and approved the filing with the SEC of ARCP's 2013 Annual Report, as set forth above, which was false and misleading in that it contained misrepresentations of material facts and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Plaintiffs specifically read, reviewed, and relied on the 2013 Annual Report, and the false and misleading statements therein, in purchasing ARCP's securities.

170.    By reason of the conduct alleged herein, Defendants ARCP, Kay, Block and McAlister knowingly or recklessly, directly and indirectly, violated Section 10(b), 15 U.S.C. § 78j, of the Exchange Act and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, in that they made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, on which Plaintiffs relied in connection with their purchases of ARCP securities.

171.    As a result of the publication of the materially false and misleading information and failure to disclose material facts as set forth above, the market price of ARCP's common

stock was artificially inflated at all relevant times alleged herein. In particular, the market price of ARCP common stock was artificially inflated due to the materially false and misleading representations and omissions alleged herein at all times when Plaintiffs purchased ARCP common stock prior to October 29, 2014.

172. Ignorant of the fact that the market price of ARCP's publicly traded common stock was artificially inflated, and relying directly upon the false and misleading statements alleged herein, as well as on the integrity of the market in which the common stock traded, and thus indirectly on the false and misleading statements made by Defendants ARCP, Kay, Block and McAlister and/or on the absence of material adverse information, Plaintiffs acquired ARCP common stock at artificially high prices and were damaged thereby when the truth was revealed.

173. Had Plaintiffs known of the materially adverse information not disclosed by Defendants ARCP, Kay, Block and McAlister, and known that ARCP's stock price was artificially inflated due to fraud, Plaintiffs would not have purchased ARCP common stock at all or not at the inflated prices paid.

174. Upon disclosure of the true facts that had still been withheld from the market at the time of Plaintiffs' purchases, the price of ARCP's common stock declined, and Plaintiffs suffered damages as a result of Defendants ARCP, Kay, Block and McAlister's violation of Section 10(b) and Rule 10b-5 in an amount to be proven at trial. Plaintiffs' damages were the direct and proximate result of Defendants ARCP, Kay, Block and McAlister's unlawful conduct as alleged herein.

175. Plaintiffs have suffered substantial damages in that, in direct reliance on Defendants ARCP, Kay, Block and McAlister's false and misleading statements and omissions, they paid artificially inflated prices for ARCP securities as a result of Defendants ARCP, Kay,

Block and McAlister's violations of Section 10(b) of the Exchange Act and Rule 10b-5. At the time of purchase by the Plaintiffs of ARCP's securities, the fair and true market value of said securities was substantially less than the prices paid by them.

176.    By virtue of the foregoing, Defendants ARCP, Kay, Block and McAlister violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

177.    Plaintiffs have brought this claim within two years of discovery of the violations alleged herein, and within five years of the violations alleged herein. Consequently, this action is timely.

<u>**THIRD CAUSE OF ACTION**</u>

**Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Misstatements and Omissions Subsequent to 2013 Annual Report Against All Defendants**

178.    The Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

179.    Defendants knew, or were reckless in failing to know, of the material misrepresentations contained in or made during, and the material omissions from, the 2014 First Quarter Report, the 2014 Second Quarter Report, Kay's meeting with Plaintiffs on or about September 9, 2014, and ARCP's Investor Day on or about September 17, 2014.

180.    Defendants Schorsch, Kay and Block, with knowledge of or reckless disregard for the truth, made, disseminated and approved the filing with the SEC of ARCP's 2014 First Quarter Report, as set forth above, which was false and misleading in that it contained misrepresentations of material facts and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not

misleading. Plaintiffs specifically read, reviewed, and relied on the 2014 First Quarter Report, and the false and misleading statements therein, in purchasing ARCP's securities.

181.    Defendants Schorsch, Kay, Block and McAlister, with knowledge of or reckless disregard for the truth, made, disseminated and approved the filing with the SEC of ARCP's 2014 Second Quarter Report, as set forth above, which was false and misleading in that it contained misrepresentations of material facts and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Plaintiffs specifically read, reviewed, and relied on the 2014 Second Quarter Report, and the false and misleading statements therein, in purchasing ARCP's securities.

182.    Defendants Kay and Block, with knowledge of or reckless disregard for the truth, made statements during ARCP's earnings call on or about July 29, 2014, as set forth above, which were false and misleading in that they contained misrepresentations of material facts and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Plaintiffs specifically reviewed and relied on these false and misleading statements in purchasing ARCP's securities.

183.    Defendant Kay, with knowledge of or reckless disregard for the truth, made statements at the Wells Fargo Securities 3rd Annual Net Lease REIT Forum on or about September 9, 2014, as set forth above, which were false and misleading in that they contained misrepresentations of material facts and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading. Plaintiffs specifically reviewed and relied on these false and misleading statements in purchasing ARCP's securities.

184.    Defendant Block, with knowledge of or reckless disregard for the truth, made public statements on or about September 17, 2014, during ARCP's Investor Day, as set forth above, which were false and misleading in that they contained misrepresentations of material facts and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.   Plaintiffs specifically reviewed and relied on these false and misleading statements in purchasing ARCP's securities.

185.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly and indirectly, violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j, and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, in that it made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading, on which Plaintiffs relied in connection with their purchases of ARCP securities.

186.    As a result of the publication of the materially false and misleading information and failure to disclose material facts as set forth above, the market price of ARCP's common stock was artificially inflated at all relevant times alleged herein.   In particular, the market price of ARCP common stock was artificially inflated due to the materially false and misleading representations and omissions alleged herein at all times Plaintiffs purchased ARCP common stock prior to October 29, 2014.

187.    Ignorant of the fact that the market price of ARCP's publicly traded common stock was artificially inflated, and relying directly upon the false and misleading statements alleged herein, as well as on the integrity of the market in which the common stock traded, and thus indirectly on the false and misleading statements made by Defendants and/or on the absence

of material adverse information, Plaintiffs acquired ARCP common stock at artificially high prices and were damaged thereby when the truth was revealed.

188.    Had Plaintiffs known of the materially adverse information not disclosed by Defendants, and known that ARCP's stock price was artificially inflated due to fraud, Plaintiffs would not have purchased ARCP common stock at all or not at the inflated prices paid.

189.    Upon disclosure of the true facts that had still been withheld from the market at the time of Plaintiffs' purchases, the price of ARCP's common stock declined, and Plaintiffs suffered damages as a result of Defendant's violation of Section 10(b) and Rule 10b-5 in an amount to be proven at trial.   Plaintiffs' damages were the direct and proximate result of Defendants' unlawful conduct as alleged herein.

190.    Plaintiffs have suffered substantial damages in that, in direct reliance on Defendants' false and misleading statements and omissions, they paid artificially inflated prices for ARCP securities as a result of Defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5.  At the time of purchase by the Plaintiffs of ARCP's securities, the fair and true market value of said securities was substantially less than the prices paid by them.

191.    By virtue of the foregoing, Defendants ARCP, Schorsch, Kay, Block and McAlister violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. Plaintiffs have brought this claim within two years of discovery of the violations alleged herein, and within five years of the violations alleged herein.  Consequently, this action is timely.

## FOURTH CAUSE OF ACTION

### Violations of Section 20(a) of the Exchange Act
### Against Defendants Schorsch, Kay, Block and McAlister

192.    Plaintiffs repeat and reallege each and every allegation contained in each of the foregoing paragraphs as if set forth fully herein.

193.    To the extent that Defendants' Schorsch, Kay, Block and/or McAlister are not found to be liable for any of the statements in the Second Cause of Action or the Third Cause of Action above, this Count is asserted in the alternative against Defendants Schorsch, Kay, Block and McAlister and is based upon Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

194.    Defendants Schorsch, Kay, Block and McAlister were at the time of the wrongs alleged herein each a controlling person of ARCP within the meaning of Section 20(a) of the Exchange Act.

195.    Defendants Schorsch, Kay, Block and McAlister had the power and influence, and did in fact exercise that power and influence, to cause ARCP to issue the statements set forth above.

196.    As the founder, CEO, and Chairman of ARCP, Schorsch was intimately familiar with, and exercised substantial control over, every aspect of ARCP's business.  Schorsch specifically directed ARCP to commit improper accounting with respect to AFFO in ARCP's 2014 First Quarter Report.  Moreover, on or about July 28, 2014, Schorsch willfully directed Block to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report by converting to reporting AFFO on a gross basis and fraudulently deferring the accrual of second quarter expenses in the 2014 Second Quarter Report.

197.    As the President of ARCP, Kay took control of the day-to-day operations of ARCP. Kay directed Block and McAlister not to correct or disclose the improper accounting in the 2013 Annual Report. Kay then directed ARCP to continue to use the improper accounting with respect to AFFO in the 2014 First Quarter Report.

198.    As the CFO of ARCP, Block bore the ultimate responsibility for ARCP's finances. Block was responsible for concealing in the 2014 Second Quarter Report the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report.

199.    As the CAO of ARCP, McAlister was in charge of ARCP's accounting. McAlister willfully signed the 2014 Second Quarter Report despite knowing of the fraudulent accounting contained in such report.

200.    By reason of the conduct alleged in Counts II and III of the Complaint, Defendant ARCP is liable for violations of Section 10(b) and Rule 10b-5 promulgated thereunder, and Defendants Schorsch, Kay, Block and McAlister are liable based on their control of ARCP.

201.    Defendant Schorsch culpably participated in ARCP's violation of Section 10(b) and Rule 10b-5 with respect to Count III because he specifically directed ARCP to use improper accounting with respect to AFFO in the 2014 First Quarter Report, and willfully directed Block to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report by converting to reporting AFFO on a gross basis and fraudulently deferring the accrual of second quarter expenses in the 2014 Second Quarter Report.

202.    Defendant Kay culpably participated in ARCP's violation of Section 10(b) and Rule 10b-5 with respect to Counts II and III because Kay directed Block and McAlister not to correct or disclose the improper accounting in the 2013 Annual Report and then directed ARCP

to continue to use the improper accounting with respect to AFFO in the 2014 First Quarter Report.

203.   Defendant Block culpably participated in ARCP's violation of Section 10(b) and Rule 10b-5 with respect to Counts II and III because Block learned of the improper accounting in the 2013 Annual Report with respect to AFFO in or around February 2014, yet did nothing to correct the accounting error in the 2013 Annual Report or to prevent the improper accounting being repeated in the 2014 First Quarter Report.  At Schorsch's behest, Block then attempted to conceal the improper accounting by converting to reporting AFFO on a gross basis and fraudulently deferring the accrual of second quarter expenses in the 2014 Second Quarter Report.

204.   Defendant McAlister culpably participated in ARCP's violation of Section 10(b) and Rule 10b-5 with respect to Counts II and III because she became aware of the improper accounting with respect to AFFO in the 2013 Annual Report in or around February 2014, yet she did nothing to correct the accounting error in the 2013 Annual Report, or to prevent the improper accounting from being repeated in the 2014 First Quarter Report.  McAlister also was fully aware of Schorsch's direction to Block to conceal the improper accounting in the 2013 Annual Report and the 2014 First Quarter Report by converting to reporting AFFO on a gross basis and fraudulently deferring the accrual of second quarter expenses in the 2014 Second Quarter Report. McAlister willfully signed the 2014 Second Quarter Report despite knowing of the fraudulent accounting contained in such report.

205.   Defendants Schorsch, Kay, Block and McAlister are liable for the aforesaid wrongful conduct, and are liable to Plaintiffs for the substantial damages which they suffered in connection with their purchases of ARCP common stock.

## FIFTH CAUSE OF ACTION

### Common Law Fraud Under New York Law
### Misstatements and Omissions in 2013 Annual Report
### Against Defendants ARCP, Kay, Block and McAlister

206.    Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

207.    As alleged above, Defendants ARCP, Kay, Block and McAlister made material misrepresentations and omitted to disclose material facts in and about ARCP's 2013 Annual Report.

208.    These misrepresentations and omissions were made intentionally, or at a minimum, recklessly, to induce reliance thereon by Plaintiffs when making decisions to invest in ARCP stock.

209.    These misrepresentations and omissions constitute fraud and deceit under New York law.

210.    Plaintiffs reasonably relied upon the representations when making decisions to purchase ARCP's shares and did not know of any of the misrepresentations or omissions.

211.    As a direct and proximate result of the fraud and deceit by Defendants ARCP, Kay, Block and McAlister, Plaintiffs suffered damages in connection with their investment in ARCP's common stock.

212.    Defendants ARCP, Kay, Block and McAlister's wrongful conduct, as described above, was malicious, reckless and willful. Accordingly, punitive damages, in addition to compensatory damages, are appropriate to deter fraudulent conduct of this kind.

## SIXTH CAUSE OF ACTION

### Common Law Fraud Under New York Law
### Misstatements and Omissions Subsequent to 2013 Annual Report
### Against All Defendants

213.    Plaintiffs repeat and reallege each and every paragraph contained above as if set forth herein.

214.    As alleged above, Defendants made material misrepresentations and omitted to disclose material facts in and about the 2014 First Quarter Report, the 2014 Second Quarter Report, the earnings call on or about July 29, 2014, the Wells Fargo Securities 3rd Annual Net Lease REIT Forum on or about September 9, 2014, and ARCP's Investor Day on or about September 17, 2014.

215.    These misrepresentations and omissions were made intentionally, or at a minimum, recklessly, to induce reliance thereon by Plaintiffs when making decisions to invest in ARCP stock.

216.    These misrepresentations and omissions constitute fraud and deceit under New York law.

217.    Plaintiffs reasonably relied upon the representations when making decisions to purchase ARCP's shares and did not know of any of the misrepresentations or omissions.

218.    As a direct and proximate result of the fraud and deceit by Defendants, Plaintiffs suffered damages in connection with their investment in ARCP's common stock.

219.    Defendants' wrongful conduct, as described above, was malicious, reckless and willful. Accordingly, punitive damages, in addition to compensatory damages, are appropriate to deter fraudulent conduct of this kind.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request relief and judgment, as follows:

(a) Awarding compensatory damages against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including pre-judgment and post-judgment interest thereon;

(b) Awarding punitive damages against Defendants;

(c) Awarding Plaintiffs their reasonable costs and expenses incurred in this action; and

(d) Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

The Plaintiffs hereby demand a trial by jury as to all issues so triable.


Dated: January 15, 2015
      New York, New York

                         LOWENSTEIN SANDLER LLP


By:_____
          Lawrence M. Rolnick
          Marc B. Kramer
          Michael J. Hampson
          1251 Avenue of the Americas
          New York, NY  10020
          Tel. 212.262.6700

## EXHIBIT A

*Dates of Plaintiffs' Purchases of ARCP Common Stock:*

7/30/2014

8/11/2014

8/12/2014

9/4/2014

9/9/2014

10/2/2014

10/3/2014

10/6/2014

10/13/2014

10/20/2014

10/23/2014

10/27/2014